Lester H. BURNS, Jr., Movant,

v.

KENTUCKY BAR ASSOCIATION,
Respondent.

No. 2004–SC–000004–KB.

Supreme Court of Kentucky.

Aug. 26, 2010.

## OPINION AND ORDER

This matter comes before the Court on the application for reinstatement by Lester Burns, Jr., under Kentucky Rules of the Supreme Court (SCR) 3.510. The Character and Fitness Committee found that Burns "has failed to present clear and convincing evidence that he presently exhibits the requisite good moral character to be reinstated to the practice of law" and further found "that he has failed to completely rehabilitate himself from past derelictions." Based on these findings, the Committee recommended denial of Burns's application for reinstatement.

The Kentucky Bar Association (KBA) Board of Governors adopted the findings and conclusions of the Committee and unanimously concurred [1] in the recommendation for this Court to deny Burns's application for reinstatement. We agree with the Board's recommendation and deny Burns's application for reinstatement.

## I.  FACTUAL AND PROCEDURAL HISTORY.

Burns was admitted to the practice of law in Kentucky in 1959. In 1986, following the institution of KBA disciplinary proceedings against him and his entry of guilty pleas to federal charges of mail fraud and transporting stolen money across state lines, this Court granted Burns's motion to resign under terms of disbarment. At the time of his disbarment, our rules did not provide for perma-

---

1. One member of the board abstained from voting; sixteen members voted to recommend disapproval of the application, and no members voted to recommend approval of the application.

nent disbarment as a disciplinary sanction; but we ordered that Burns would not be allowed to apply for reinstatement for at least five years.

This Court did not issue a reported opinion detailing Burns's misconduct at the time of his disbarment. And upon Burns's application for reinstatement, the Committee and the Board focused primarily on Burns's conduct since his disbarment and his present character or attitude as evidenced by his own testimony and the testimony of others. The Committee only briefly described the misconduct leading to his disbarment. Because the misconduct leading to Burns's disbarment is a relevant, although not solely determinative, factor in assessing his reinstatement application,[2] we briefly summarize the criminal conduct for which Burns entered guilty pleas, as well as other professional misconduct issues raised by the KBA in its brief to this Court.

The mail fraud indictment charged Burns with being involved in a scheme staging automobile accidents and filing fraudulent lawsuits to defraud an insurance company. The transportation of stolen money indictment alleged that Burns (1) knowingly accepted money stolen in an armed robbery and murder as a fee for representing one of the defendants prosecuted for those crimes and (2) transported the stolen money from Florida to Kentucky. Specifically, the indictment alleged that Roger Dale Epperson, Benny Lee Hodge, and Donald Terry Bartley stole approximately $1.9 million from Dr. Roscoe Acker in an armed robbery during which they killed Acker's daughter; that some of the money was disposed of to pay legal fees for the perpetrators; and that Burns knowingly received part of the stolen money in Florida and transported it into Kentucky as his fee for representing Epperson. Burns pled guilty to both mail fraud and transporting stolen money across state lines. Burns's client, Epperson, was sentenced to death.

The KBA also alleges, and the Committee seemingly accepted, that Burns accepted a $75,000 kickback from attorney Dale Mitchell for cajoling Hodge's wife into hiring Mitchell as defense counsel for Hodge.[3] Further, according to the KBA, Burns admitted to taking a total of $250,000 in stolen money but only testified at the Committee hearing to returning $225,000 to Dr. Acker despite vowing under oath to make complete restitution when entering his guilty plea on the transportation of stolen money charges.[4]

The KBA also points out that Hodge's counsel, Mitchell, was initially Burns's criminal defense counsel when Burns was

---

**2.** SCR 2.300(7), which governs applications for reinstatement, provides that: "The prior determination that he/she engaged in professional misconduct continues to be evidence against him or her and the proof presented must be sufficient to overcome that prior adverse judgment."

**3.** Committee Findings of Fact, Conclusion of Law and Recommendation. ("Mr. Burns testified that about this same time [that he was involved in or charged with the staged accidents and insurance fraud], he was asked to represent one of the defendants in a Letcher County[,] Kentucky[,] robbery and murder case. At her request, he met the wife of Defendant Roger Epperson at a motel in Florida and accepted $175,000 in cash as his fee for representing Roger Epperson. He said he knew, at the time, that the payment was part of the money stolen from Dr. R.J. Acker, whose daughter was murdered during the robbery.... He received another $75,000 from Dale Mitchell for arranging Mitchell's representation of one of the other defendants.").

**4.** We note there is conflicting evidence because the committee report states that Dr. Acker wrote the Parole Board to confirm that Burns had returned the money to him.

indicted for knowingly accepting the stolen money; yet, Burns continued to represent Epperson in the capital murder case despite this conflict. The KBA also points out that Epperson has a Kentucky Rules of Criminal Procedure (RCr) 11.42 motion pending alleging that Burns rendered ineffective assistance on a wide variety of grounds that would constitute professional misconduct if proven. But Epperson's allegations of professional misconduct—other than the criminal acts to which Burns pled guilty in the federal indictment—have never been fully tried after this Court's 1986 summary order granting his motion to resign under terms of disbarment.

Many years after being released from federal prison, Burns filed an application for reinstatement in early 2004. Because of the length of his absence from the practice of law and the serious nature of the misconduct leading to his disbarment, the Character and Fitness Committee investigation of Burns took over a year to complete. Then the application process was continued indefinitely because of Burns's ill health.

In 2007, this Court issued an order indicating that the application proceeding would be dismissed for lack of prosecution. Burns responded, citing his health problems; and this Court allowed him additional time to retain an attorney and update his application. The reinstatement application process then proceeded with a formal hearing conducted before the Character and Fitness Committee in July 2009.

In its recommendation to the Board of Governors, the Committee noted the standards for ruling on an application for reinstatement established by our Rules:

A reinstatement applicant has the burden of proving, by clear and convincing evidence, that he/she possesses the requisite character, fitness and moral qualifications for readmission to the practice of law. SCR 2.300(6) and SCR 3.330. In making this determination, the Committee considers, among others, the following nonexclusive factors:

(a) Whether the Applicant has complied with every term of the order of suspension.

(b) Whether the Applicant's conduct, while under suspension, shows that he is worthy of the trust and confidence of the public.

(c) Whether the Applicant possesses sufficient professional capabilities to serve the public as a lawyer.

(d) Whether the Applicant presently exhibits good moral character.

(e) Whether the Applicant appreciates the wrongfulness of his prior misconduct, has manifest contrition for his prior professional misconduct, and has rehabilitated himself from past derelictions.

Failure to meet any of the above criteria may constitute sufficient basis for denial of an application for reinstatement. SCR 2.300(6)(e).

Applicants for reinstatement are held to a substantially more rigorous standard than a first-time Bar Applicant[,] and the proof presented must be sufficient to overcome the prior adverse judgment. SCR 2.300(7).

The Committee also summarized pertinent cases from this Court governing reinstatement, including holdings that:

1) A reinstatement applicant has the burden of proving that the applicant meets requirements for reinstatement;[5]

2) The applicant must demonstrate exemplary conduct since disbarment and the applicant's worthiness of public con-

5. *White v. Kentucky Bar Association*, 989 S.W.2d 573, 576 (Ky.1999).

fidence and trust to merit reinstatement;[6] and

3) The applicant must demonstrate complete candor with reviewing authorities at all times to merit reinstatement.[7]

Burns does not take issue with these governing standards.

The Committee's findings focused on vexing issues of whether Burns had fully complied with the terms of his disbarment, especially the prohibition against engaging in the practice of law or holding himself out to be an attorney during his disbarment; his lack of candor, especially in regard to alcohol abuse and violent behavior; and his failure to take full responsibility for his criminal and professional misconduct.

## II. COMPLIANCE WITH TERMS OF SUSPENSION OR DISBARMENT.

Concerning the relevant factor of compliance with the order of disbarment, the Committee observed that evidence indicated that Burns had complied with the requirement that he notify clients of his inability to represent them. But the Committee was not persuaded that Burns had fully complied with the terms of his disbarment, pointing to evidence that after he was disbarred, Burns continued to identify himself as an attorney in making political campaign contributions and engaged in actions approximating the unauthorized practice of law.

The Committee acknowledged that Burns was entitled to draft pleadings for lawsuits in which he represented himself, but it found that "some of his legal work may have crossed the line" when he assisted an individual with filing a bar complaint against another attorney. The Committee specifically noted the individual's testimony that "he [Burns] told her it would keep him [Burns] from being re-admitted if the KBA found out that he had helped her[,]" which the Committee believed "indicates that he [Burns] thought he was doing something wrong and did it anyway."

The Committee also cited "[h]is work as an 'investigator' and paralegal" for an attorney as "another example of Mr. Burns engaging in activities that may or may not have been practicing law, but are close enough to the line to be of concern." Although it had "no reason to disbelieve" the attorney who testified to having no knowledge of Burns practicing law after his disbarment, it nonetheless acknowledged that it could not reasonably "expect an attorney to admit he had assisted an individual in unlawful practice . . . ."

## III. POSSESSION OF SUFFICIENT PROFESSIONAL CAPABILITIES.

The Committee noted that Burns claimed to have completed the required number of CLE hours from the date of his application for reinstatement in 2004 to the present. The Committee stated in its findings that it believed Burns had satisfied these requirements "but will leave the final word on this matter to the [CLE Commission of the] KBA." Despite the apparent compliance with CLE requirements, however, the Committee was not convinced that Burns was sufficiently truthful to merit reinstatement, finding a general lack of candor with the Committee that could foreshadow a future lack of candor with courts.

## IV. TRUSTWORTHINESS, PUBLIC TRUST, AND GOOD MORAL CHARACTER.

The Committee made very specific findings indicating why it did not believe

---

**6.** *Lester v. Kentucky Bar Association,* 532 S.W.2d 435, 436 (Ky.1976).

**7.** *In re Cohen,* 706 S.W.2d 832, 834–35 (Ky. 1986).

Burns exhibited the requisite moral character to practice law and engender public trust and confidence in members of the bar, especially noting Burns's lack of candor and the inconsistency in his testimony regarding substance abuse and violent behavior:

The most damaging factor the Committee considered with regard to Mr. Burns'[s] character is his lack of candor. As summarized above, in his testimony before the Committee he repeatedly maintained that he was only guilty of crossing state lines with money he knew to be stolen and planning to file a fraudulent lawsuit. Only after intense cross-examination did he admit to the Committee what he admitted in Federal Court, that he committed multiple acts with his co-conspirators in furtherance of the fake accident and fraudulent personal injury claims.

Mr. Burns'[s] hearing testimony regarding violent behavior was inconsistent and lacking in truthfulness. After denying the occurrence of domestic violence in his marriage to Asonia Burns, he then said he might have slapped her one time. Afterward, he attempted to correct his testimony to say that he could have been violent with her in a drunken stupor.

Mr. Burns also exhibited a lack of candor regarding his problems with alcohol. Under cross-examination, he admitted to the Committee that he was not truthful regarding his drinking habits to Judge Eugene Siler at the hearing when he pled guilty to the crimes of mail fraud and receiving stolen money. He told Judge Siler that he was never a big drinker and would only take a social drink.

His testimony at the July 1, 2009[,] hearing regarding alcohol use was inconsistent and, at times, less than truthful.

He claimed to have abused alcohol only during the period about three years before he was arrested; and only because of physical pain. Several witnesses were asked to verify that he drank alcohol in excess because of severe pain and only in the three years before he was arrested; however, the Committee heard no support for that claim. He first testified that he had only one drink after he was released from prison; and only under cross-examination by the Committee did he admit to some "very slight" drinking after prison before quitting entirely.

Other evidence, however, indicates a much more serious alcohol abuse problem. For example, in 2005, Roy Campbell commented to the Committee's investigator about his and Mr. Burns'[s] drinking habits, yet Mr. Burns denied that they ever drank alcohol together; and his daughter told the investigator that when he started drinking again after prison, he was physically abusive toward her mother. Even Mr. Burns, at one time in his testimony, said he would take his ex-wife's word as to any violence because he was a "real drunk."

Because of his inconsistent and untruthful testimony, the Committee cannot be certain as to whether or not Mr. Burns continues to abuse alcohol and whether or not he continues to commit acts of violence. At the very least, he has not been candid with the Committee.

In addition to lack of candor and inconsistency regarding his alcohol consumption, the Committee also noted evidence that Burns had not participated in KYLAP and otherwise did not seem to be sincerely and actively pursuing treatment for apparent alcoholism:

During cross-examination, Mr. Burns denied that he is an alcoholic ... and stated that he has never participated in

KYLAP because he has not needed to.... He repeated that he "took a very extensive course in Triple A (AAA) [presumably an attempted reference to Alcoholics Anonymous] furnished by the United States Bureau of Prison and "taught in it and counseled in it for months.... He explained what it means to be an instructor by saying, "you have to stand up and first you say, I'm a drunkard. I'm a drunk. I'm an alcoholic and all that bull.".....

Randall Ratliff, Director of KYLAP[,] testified that participants in Alcoholics Anonymous do not "graduate" and that AA does not utilize anyone as an "instructor".... He stated that the 12th Step in AA is to carry the message to other people, which is an essential part of one's own personal recovery.... Mr. Ratliff testified that, to his knowledge, Mr. Burns has never contacted KYLAP or participated in its program.

The Committee also noted that Burns admitted to giving several different addresses on various documents while divorce proceedings in which proper venue was a hotly contested issue were pending, beginning around the year 2000, which was several years after he was released from federal prison.

## V.  CONTRITION, REMORSE, AND REHABILITATION.

The Committee found that Burns did not show sufficient appreciation of the wrongfulness of criminal misconduct, contrition for such misconduct, present rehabilitation, or candor with the Committee. To the contrary, the Committee found that Burns attempted to minimize his crimes or shift the blame to others. Specifically, it found that:

In testimony before the Committee, Mr. Burns tried to minimize his wrongful actions. Rather than admit responsibility for his wrongful conduct in the mail fraud, he testified that government agents targeted him after he successfully defended a criminal case in West Virginia. He tried to minimize it further by saying he was not supposed to receive any of the money and that his only wrongdoing was planning to file the lawsuit. The indictment and guilty plea transcript show otherwise. As previously stated, Mr. Burns has not been candid in his dealings with the Committee.

Regrettably, Mr. Burns still has not shown the Committee persuasive proof of rehabilitation in the area of alcohol abuse, anger management[,] and his tendency to be untruthful when it serves his purposes. The evidence before the Committee is replete with examples of his untruthfulness.

## VI.  ANALYSIS.

█ Burns contends that in recommending denial of his application for reinstatement, the Committee and the Board incorrectly rely primarily on testimony "from those who knew Mr. Burns before, during and immediately after the occurrence of the problems he had with the law and the Kentucky Bar Association," and "fail to address Mr. Burns['s] actions since the time of the divorce from his wife." [8] He states that the investigative reports filed include "interviews with people who have known the Applicant the last ten years and they indicate that he is of good moral character and believe his application for reinstatement should be approved." He also points to the testimony of his daughter, who wished for her father to be reinstated so he could help people by prac-

8.  From our review of the record, Burns and his ex-wife both filed for divorce in the year 2000, although we are not aware of when the divorce decree was entered.

ticing law, and to his own testimony indicating that he is embarrassed by and remorseful for his actions resulting in his disbarment and wishes to help people through law practice. He also contends that he has paid his debt to society, including time in federal prison, and that after being unable to practice law for over twenty years, he "wants to feel whole again."

■ Despite these arguments, we conclude that there was ample evidence supporting the Committee's and Board's findings that Burns lacked the requisite character and was not sufficiently rehabilitated to merit reinstatement. We further agree with their recommendations to deny the reinstatement application. We note that there is no requirement that these regulatory bodies focus exclusively on present events and overlook significant and troubling criminal conduct occurring more than ten years ago. In any event, the Committee emphasized that Burns's lack of candor and inconsistency in his hearing testimony indicated that he currently lacks the requisite moral character to be reinstated to the practice of law.

And even if Burns "has not returned to the depths of wrongdoing that plagued him" in the past and even though the evidence may show that "he has taken steps *toward* rehabilitation[,]" a disbarred attorney bears a much higher burden to prove his character and fitness than an initial bar applicant. So the present lack of candor, inconsistencies in sworn statements, and failure to take full responsibility for misconduct call for denial of the reinstatement application.[9]

Unlike a disciplinary case in which the KBA bears the burden of proof, a disbarred attorney seeking reinstatement bears the burden of proof.[10] We commend the steps Burns has taken toward rehabilitation. But, in light of the heavy burden that a disbarred applicant bears to convince disciplinary authorities and this Court that the applicant can be entrusted with a law license and the undisputed facts here, we agree with the Committee's and Board's recommendations.

Accordingly, the Court ORDERS:

1) Lester Burns's application for reinstatement is denied; and

---

9. *Futrell v. Kentucky Bar Association,* 189 S.W.3d 541, 550 (Ky.2006) ("While Futrell's brief musters, in great detail, the evidence that supports his contention of rehabilitation, it is not enough to outweigh the evidence discussed above.... [W]e must also remember that a higher character of conduct is required of a disbarred attorney than of an original applicant. Simply put, Futrell's lack of candor, the inconsistencies and omissions in his sworn statements, and his unwillingness to concede that he engaged in wrongdoing or even to show any remorse for his actions all point to a lack of rehabilitation. Admittedly, Futrell has not returned to the depths of the wrongdoing that plagued him in the 1980s, and there is some, one might even say substantial, evidence that he has taken steps *toward* rehabilitation. But Futrell bears the burden of demonstrat[ing] by clear and convincing evidence his [ ] suitability for reinstatement.... Given this high burden of proof, and the facts discussed herein, we conclude that Futrell has failed to demonstrate that his conduct and character since disbarment ... show that he is worthy to have public confidence and trust placed in him.") (internal quotation marks and citations omitted).

10. SCR 2.300(6) ("While the burden of proof in a disciplinary proceeding rests with the KBA, in reinstatement cases[,] the applicant has the burden of proving by clear and convincing evidence that he/she possesses the requisite character, fitness and moral qualification for re-admission to the practice of law."); SCR 3.330 ("The burden of proof shall rest upon the Association in a disciplinary proceeding, and the facts must be proven by a preponderance of the evidence. In reinstatement hearings[,] the burden shall rest upon the Applicant[;] and he/she must demonstrate by clear and convincing evidence his/her suitability for reinstatement.").

2) In accordance with SCR 3.510, Mr. Burns shall pay costs associated with this proceeding for which execution may issue from this Court upon finality of this Opinion and Order.[11]

MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCHRODER, and SCOTT, JJ.; and SEAY and BULLOCK, Special JJ., sitting. All concur. NOBLE and VENTERS, JJ., not sitting.

ENTERED: August 26, 2010.

/s/ John D. Minton, Jr.
    Chief Justice

---

11. SCR 3.510(1) requires applicants for reinstatement to post a bond of $2,500 to secure the costs of a reinstatement proceeding and further provides that "[a]ny additional costs shall be paid by Applicant." The KBA certified its costs in this proceeding as totaling $5,859.03.