Charles L. HUFFMAN, III, Movant

v.

### KENTUCKY BAR ASSOCIATION, Respondent.

No. 2013–SC–000282–KB.

Supreme Court of Kentucky.

Nov. 21, 2013.

As Corrected Nov. 25, 2013.

Rehearing Denied March 20, 2014.

## OPINION AND ORDER

JOHN MINTON, Chief Justice.

Charles L. Huffman, III,[1] pleaded guilty in federal court to the felony offense of willfully and unlawfully affecting interstate commerce by extortion. The charge arose from Huffman's conduct while serving as a district judge. Following his conviction, our predecessor Court allowed Huffman to resign from the Kentucky Bar under threat of disbarment.[2] Huffman now requests this Court to approve him for the process of reinstatement to the practice of law in the Commonwealth of Kentucky. For the reasons stated below, we deny Huffman's request.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts leading to Huffman's suspension and later resignation from the practice of law are not disputed. In 1994, while Huffman was serving as Judge of the Thirty-fifth Judicial District of Kentucky, in exchange for drugs, he assured a criminal defendant favorable treatment. Huff-

man guaranteed the defendant that he would "take care" of the sentence so that her sentence would be no more than community service. The defendant, in return, promised to furnish Huffman with Loracet, Loratab, and various other controlled substances. Huffman pleaded guilty in 1995 to the federal felony offense of knowingly and willfully attempting to affect commerce by extortion, which resulted in an automatic temporary suspension of Huffman's license to practice law. Later, Huffman was charged with one count of professional misconduct for violating Supreme Court Rules (SCR) 3.130–8.3(b).[3] Finally, in 1997, Huffman petitioned our predecessor Court for permission to resign from the practice of law under terms of disbarment. The Court granted Huffman's petition, and he now seeks reinstatement of his license under SCR 3.510.

Under SCR 3.510, reinstatement following a suspension of the magnitude presented here is referred to the Office of Bar Admissions Character and Fitness Committee for proceedings under SCR 2.300.[4] In Huffman's case, the Committee, after investigation and hearing, found that Huffman had complied with all the terms of the Court's order permitting his resignation. The Committee noted Huffman's exemplary conduct since his resignation and found, by clear and convincing evidence, that Huffman currently exhibits good and moral character and appreciates the wrongfulness of his actions that led to his resignation. Based on these findings, the Committee recommended to the Board of Governors that Huffman be reinstated

---

1. Kentucky Bar Association (KBA) Member No. 81428; admitted to practice law in Kentucky in 1985; bar roster address, 627 Hambley Boulevard, Suite 1, Pikeville, Kentucky 41501.

2. *See Huffman v. Kentucky Bar Ass'n*, 954 S.W.2d 321 (Ky.1997).

3. SCR 3.130–8.3(b) is now found at SCR 3.130–8.4(b). The rule reads, "It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

4. SCR 3.510(4).

to the practice of law, with certain conditions, including Huffman's continued participation in the Kentucky Lawyers Assistance Program (KYLAP). The Board of Governors unanimously adopted the Committee's recommendation, finding that Huffman has demonstrated the appropriate degree of rehabilitation necessary to support his reinstatement. We disagree and deny Huffman's reinstatement.

## II. ANALYSIS.

At the outset, we acknowledge that Huffman's personal rehabilitation story is admirable; and his work helping others' recovery from addiction is praiseworthy. Notably, Huffman has volunteered at the Salvation Army; a prison ministry; and worked as an alcohol and substance abuse counselor at WestCare, a nonprofit devoted to providing a wide spectrum of health and human services. But we cannot approve Huffman's reinstatement to the practice of law. Huffman's crime of extortion, perpetrated by trading on his position of power as a district judge in the Kentucky Court of Justice, is a breach of public trust that, in our view, permanently disqualifies him from restoration to the practice of law. Furthermore, approving Huffman's reinstatement is inconsistent with our recent decisions in comparable cases dealing with similar criminal conduct by lawyers who were elected officials.

In the past, we have consistently taken criminal financial misconduct by attorneys very seriously,[5] Indeed, "we have disbarred attorneys who have committed financial misconduct even when they have made efforts to rehabilitate themselves and even when they had committed merely a single offense." [6] Permanent disbarment is the near-routine sanction for gross financial misconduct. And permanent disbarment means inability to seek reinstatement.

Despite its singularity, Huffman's misconduct was gross misconduct. In reviewing the conduct of Huffman, we see no reason to depart from the sound view of treating gross misconduct seriously. Huffman should not be reinstated. Our predecessor Court permitted him to resign under threat of permanent disbarment. At the time of this incident, permanent disbarment, as it operates now with no ability to seek reinstatement, was not in existence. But we do not think this technicality should cloud the judgment of this Court. It is almost certain that if Huffman's case were to arise today, given the cold treatment of financial misconduct, permanent disbarment would be the ordered penalty. We should not stray from that position simply because Huffman was permitted to resign rather than face certain disbarment. Huffman's story is one of tragedy; but it is also a story of egregious conduct in public office, and we must not lose sight of that.

5. *See, e.g., Kentucky Bar Ass'n v. Carmichael,* 244 S.W.3d 111, 114 (Ky.2008) (ordering disbarment for extortion conviction while serving as Commonwealth's Attorney); *Kentucky Bar Ass'n v. Rice,* 229 S.W.3d 903 (Ky.2007) (ordering permanent disbarment because Rice committed identity theft despite Rice's having no prior disciplinary record, attempting to maintain employment, complying with terms of probation, expressing remorse, and engaging in no further criminal conduct); *Kentucky Bar Ass'n v. Rorrer,* 222 S.W.3d 223, 229 (Ky.2007) (ordering permanent disbarment for single money-laundering charge); *Charles E. King v. Kentucky Bar Ass'n,* 162 S.W.3d 462 (Ky.2005) (granting King's motion for permanent disbarment as a result of his misappropriation of funds while serving as Master Commissioner for McCreary Circuit Court); *Kentucky Bar Ass'n v. Layton,* 97 S.W.3d 452 (Ky.2003) (ordering Layton permanently disbarred for the illegal conversion of funds as Master Commissioner of Jessamine and Garrard counties).

6. *Kentucky Bar Ass'n v. Reynolds,* 378 S.W.3d 310, 312–13 (Ky.2012) (internal quotation marks omitted).

The most troubling aspect of Huffman's misconduct is the fact that he was a serving as the duly-elected district judge when he committed the crime of extortion at the heart of this matter. "In 1994, while serving as District Judge of the thirty-fifth district in Pike County, Huffman promised favorable treatment to a criminal defendant in exchange for drugs."[7] This conduct is intolerable. Huffman's actions strike at objectivity, the very foundation of our justice system.

We have repeatedly denounced attorneys improperly using their position of power for their own selfish ends. In *Kentucky Bar Ass'n v. Carmichael,* we dealt with a Commonwealth's Attorney who extorted money from criminal defendants in exchange for agreeing not to prosecute. The Court in *Carmichael* found it completely appropriate to order Carmichael permanently disbarred for his conduct. In doing so, the Court stated it was "disturbed" and "troubl[ed]" by two factors in particular: (1) Carmichael's improper use of his "position of authority and influence as the elected Commonwealth's Attorney for the 28th judicial district" and (2) "the fact that Carmichael was the lead prosecutor for the Commonwealth when he attempted to extort money."[8] We fail to see how Huffman's case differs from Carmichael's. Here, Huffman was assuredly in a position of authority and influence, so placed as a result of the confidence and trust of the voters of Pike County. And

Huffman was *the* judge overseeing the case of the criminal defendant he received drugs from, offering a favorable outcome in exchange.

Moreover, in *Kentucky Bar Ass'n v. Rice,* the Court permanently disbarred an assistant Commonwealth's Attorney for engaging in identity theft and charging thousands of dollars on a credit card he had opened in someone else's name. Similar to Huffman, Rice demonstrated his rehabilitation. Rice "had no prior disciplinary record, had made efforts to maintain employment, had complied with the terms of his probation, had engaged in no further criminal activity, and had expressed remorse for his conduct."[9] Despite these mitigating factors, the Court found permanent disbarment appropriate given the nature of Rice's conduct. Huffman's conduct is at least on the same level. Our case law is filled with examples of attorneys who expressed remorse or became model citizens but are no longer allowed to practice law.

This Court has repeatedly, especially recently, held elected officials to a higher standard and punished them accordingly for their betrayal of the public trust.[10] Huffman's conduct is particularly egregious because he exploited the very system he was sworn to oversee and operate. As has been said, "The public can have no confidence in the legal system if the members sworn to uphold it manipulate outcomes in the name of greed and personal gain."[11] And "[f]or one such to trample

---

7. *Huffman,* 954 S.W.2d at 321.

8. *Carmichael,* 244 S.W.3d at 115.

9. *Id.* at 114 (citing *Rice,* 229 S.W.3d at 904–05).

10. *See, e.g., Kentucky Bar Ass'n v. Maze,* 397 S.W.3d 891 (Ky.2013); *Kentucky Bar Ass'n v. Bamberger,* 354 S.W.3d 576 (Ky.2011) (disbarring circuit court judge permanently for his

egregious conduct as a presiding judge and noting that it "shock[ed] the Court's conscience."); *Kentucky Bar Ass'n v. Dixon,* 373 S.W.3d 444 (Ky.2012) (disagreeing with Trial Commissioner's recommendation and imposing public reprimand at least partly because Dixon, as County Attorney, was an elected official); *King,* 162 S.W.3d 462; *Layton,* 97 S.W.3d 452.

11. *Reynolds,* 378 S.W.3d at 312 (Ky.2012).

those laws under foot argues recreancy to his position and office and sets a pernicious example to the insubordinate and dangerous elements of society."[12] We do not believe that we, as the institution constitutionally charged with regulation of the practice of law in this Commonwealth, can allow an individual guilty of such violence to the rule of law to return to practice. The trust of the public is too important.

## III. CONCLUSION.

We are unable to reinstate Charles L. Huffman, III, to the practice of law in this Commonwealth. Permanent disbarment is the appropriate sanction for the misconduct Huffman has been found guilty of. So the Court ORDERS that the motion for reinstatement is DENIED.

ALL SITTING.; ABRAMSON, NOBLE, and VENTERS, JJ., concur. SCOTT, J., dissents by separate opinion in which CUNNINGHAM and KELLER, JJ., concur.

SCOTT, J., dissenting.

I must dissent from the majority's opinion denying the reinstatement of Charles L. Huffman, III to the practice of law. I do so because I support a conditional readmission for him, under strict supervision of the Kentucky Lawyers Assistance Program (KYLAP) for a period of five (5) years.[13] In this conditional readmission, I am supported by: (1) a *unanimous* Character and Fitness Committee, (2) a *unanimous* Kentucky Bar Association Board of Governors, as well as (3) *Bar Counsel*, who joined in Huffman's request before the Board of Governors. To do otherwise, I

fear, will greatly undermine the systems of rehabilitation that are—*or should be*—widely supported within this state.

Sometimes people are just people, yet their second chances are often vital to real growth in a society. Theirs are the hopes on which many futures are constructed. And, given their life experiences, they often become significant leaders in the helpful structures of a society. They are the beacon and the light in the darkness for many in search of their pathways.

In this respect, this Court has implemented programs like KYLAP, Drug Court, and Mental Health Court for the very purpose of rehabilitating those with substance abuse and mental health issues in an effort to reintegrate those individuals as contributing members of society. We have done this because of our acceptance and understanding of addiction. And our continuing support of such programs is good evidence that they work!

In fact, our whole concept of criminal justice is predicated on the belief that rehabilitation can work. And, to me, there can be no greater example of rehabilitation than Charles Huffman's last eighteen years of service. Thus, to deny him the supervised conditional opportunity to again become a fully functioning member of society is a position I cannot, in good conscience, support—not while I truly believe in rehabilitation.

What Huffman did nineteen years ago was wrong, even deplorable, no matter how impaired he was. Yet, it was an instance of great indiscretion that

---

12. *In re Stump,* 272 Ky. 593, 114 S.W.2d 1094 (1938).

13. This Court has successfully used KYLAP conditional readmission in addiction related suspensions in the past. *See Bertram v. Kentucky Bar Ass'n,* 209 S.W.3d 469, 471 (Ky. 2006) (Bertram was convicted of several drug related crimes and later conditionally readmitted with two (2) years supervision by KYLAP); *Jones v. Kentucky Bar Ass'n,* 203 S.W.3d 132, 135 (Ky.2006) (Jones was suspended following convictions of several federal drug crimes in 2003 and was subsequently readmitted with the condition that he submit to three (3) years' supervision by KYLAP).

stemmed from the demon of addiction that had compromised his ability to think and behave in a rational manner.[14] However, he has now paid his dues to society and has served out his criminal sentence.[15]

The majority argues that if Huffman was disbarred under the current state of the law, he would never have the opportunity to be reinstated. It may be true that as the law currently stands Huffman would not have had the opportunity for reinstatement; however, under Section 19 of the Kentucky Constitution, we cannot unilaterally retroactively apply laws. The law at the time of his disbarment allowed for reinstatement, and that is the law that we must apply in his case now.

The majority's opinion also makes the argument that because he was a sitting district judge at the time of his indiscretion, he should be held to a higher standard, and, thus, should not be readmitted.[16] I accept this application of a higher standard—it is surely justified, yet in this case it *was met,* even under the higher standard of "clear and convincing" evidence.[17]

As evidence of such proof, I refer to the findings of the Character and Fitness Committee as relied on by the Board of Governors in their Findings of Fact, Conclusions of Law, and Recommendations, to wit:

The Committee carefully reviewed the Application for Reinstatement and evidence presented by Mr. Huffman, the evidence contained in the KBA disciplinary file and the results of the independent investigation. All evidence was considered in view of the Applicant's burden of proof as found in SCR 2.300(6). The Character and Fitness Committee filed its Findings of Fact, Conclusions of Law and Recommendations on April 20, 2012. The Committee found as follows:

1. Mr. Huffman's resignation from the Kentucky Bar Association, approved by the Kentucky Supreme Court under terms of disbarment, has continued for over fourteen years. He has not practiced law since the October 30, 1997 [final] Opinion and Order [now eighteen years]. The Committee finds that Mr. Huffman has complied with all of the terms of the Opinion and Order.

2. That Mr. Huffman's conduct, since his resignation, has been exemplary. Individuals who were interviewed by the Committee's investigator and who provided character reference information to the Committee spoke positively about his rehabilitation from years of addiction and substance abuse. These individuals expressed opinions that he

---

**14.** Mr. Huffman testified candidly before the Character and Fitness Committee regarding his alcohol and other substance addictions and his criminal acts. He admitted that he had abused alcohol and drugs since he was thirteen years old and that he was never clean and sober for more than six months at a time during his adult life until his arrest in 1995. Exhibits to his application detail his extreme battle, treatment, and institutionalization for alcohol and drug addiction, and severe depression since 1981.

**15.** Huffman served two years in a federal prison in Fort Worth, Texas, and at a halfway house in Lexington, Kentucky.

**16.** Under SCR 3.510(4) "[t]he Board shall ... recommend approval or disapproval to the Court. We have, as of now, granted ourselves no authority to order permanent disbarment upon a recommendation of readmission. *Id.; see also* SCR 3.510(3) ("the Court may enter an order reinstating the applicant ... or denying reinstatement).

**17.** SCR 2.300(6) ("[T]he applicant has the burden of proving by clear and convincing evidence that he/she possessed the requisite character, fitness, and moral qualifications for readmission to the practice of law.").

has paid his debt to society and should be allowed to re-enter the profession.

3. That Mr. Huffman, by clear and convincing evidence, is worthy of the trust and confidence of the public, possesses sufficient professional capabilities to serve the public as a lawyer and presently exhibits good moral character.

4. That Mr. Huffman presented clear and convincing evidence that he appreciated the wrongfulness of his misconduct and that he has manifest contrition for the misconduct that led to the temporary suspension and subsequent resignation under terms of disbarment.

5. That, based on the evidence presented of his volunteer work for the Salvation Army and in jail ministry and his chosen employment at WestCare as a counselor with alcohol and other substance abuse problems, Mr. Huffman has rehabilitated himself from the past inappropriate conduct.

6. That Mr. Huffman would benefit from participation with KYLAP for at least five (5) years, after which time the Committee would review the reports from KYLAP and any other available evidence regarding his compliance with the terms of his conditional admission before determining whether to release him from conditional admission. The KYLAP Supervision Agreement should include provisions for monitoring and/or verifying Mr. Huffman's continued compliance with medical and psychiatric treatment as recommended by his treating psychiatrist and counselor and shall include continued abstinence from alcohol and illegal drugs.

7. That Mr. Huffman's reinstatement to the practice of law be further conditioned upon his agreement to provide information concerning his bankruptcy petition to the Committee and to provide and file a report with the Committee within ninety (90) days of his re-admission describing his current financial status and the final disposition of his bankruptcy filing.

Bar Counsel joined in the request for reinstatement of Mr. Huffman. The Board then concluded by a vote of 19–0, that:

The Board considered the standards of reinstatement set out by the Supreme Court, and the requirements of SCR 2.300 and has determined that Mr. Huffman has met fully all of the standards. The Board of Governors has reviewed the entire record and has determined that Mr. Huffman has completed all administrative steps necessary to be considered for reinstatement and has satisfied all administrative requirements. Mr. Huffman has completed CLE requirements for the year ending June 30, 2012. The Board of Governors further determined that Mr. Huffman's conduct since his suspension has demonstrated the appropriate degree of rehabilitation necessary to support his reinstatement. Mr. Huffman has accepted full responsibility for his actions that led to his suspension. The Board voted 19–0 to recommend that the application for reinstatement to the Kentucky Bar Association pursuant to SCR 3.510 be approved.

Its recommendation of conditional approval, with which I fully agree, was that:

[Charles L. Huffman, III] be monitored by KYLAP for a period of five (5) years subject to review by the Character and Fitness Committee at the end of the five (5) year period to determine whether his KYLAP participation should continue. The KYLAP supervision agreement shall include continued compliance with medical and psychiatric treatment recommended by Mr. Huffman's treat-

ing psychiatrist and counselor, reports from his treating psychiatrist ever six (6) months, at least monthly contacts with a KYLAP monitor and shall include continued abstinence from alcohol and illegal drugs. Mr. Huffman shall further file a report to the Character and Fitness Committee within ninety (90) days of his readmission to the Kentucky Bar Association describing his current financial status and the final disposition of his bankruptcy filing, and that he be current on his CLE requirements for the 2012–2013 year, if not reinstated by the Supreme Court prior to the new CLE year, and that he be current as to bar dues. Further, the reinstatement is also conditional on Applicant's compliance with SCR 3.510(4) and successful completion of the exam by the Board of Bar Examiners.

The costs of this proceeding, including amounts incurred after the consideration and vote by the Board, as calculated and certified by the Disciplinary Clerk in the amount of $1,315.67 should be assessed against and paid by Applicant as required by SCR 3.150(1).

I would also note that the fact that an attorney was *in a place of public trust* has not kept us from reinstating licenses in the past. For example, former United States First District Congressman, Carroll Hubbard, was convicted of three felonies: one count of conspiracy to impede and impair the Federal Election Commission, one count of theft of government property, and one count of obstruction of justice and also resigned under terms of disbarment in 1994. *Hubbard v. Kentucky Bar Ass'n,* 878 S.W.2d 13 (Ky.1994). In our opinion readmitting Hubbard, we noted that "[re-]applicants are to be held to a substantially more rigorous standard than a first time applicant and the proof presented must be sufficient to overcome the prior adverse judgment. The judgment of disbarment continues to be evidence against the applicant and he may overcome it only by the most persuasive proof." *Id.* at 685 (Ky.2001); *see also Craft v. Kentucky Bar Ass'n,* 291 S.W.3d 243 (Ky.2009) (readmitting a former Commonwealth's Attorney eleven years after he resigned in 1998 under terms of disbarment for procuring perjury).

This is, indeed, a very lofty standard, but this Court readmitted Hubbard to the' practice of law after seven years based upon the Character and Fitness Committee's findings, and this Court's belief that he was again worthy of the trust and confidence of the public and his readmission would not be a detriment to the legal profession. *Id.* at 695.

If these findings were persuasive enough to allow for the reinstatement of man who was elected to represent hundreds of thousands of people at the federal level, or a former Commonwealth's Attorney who represented tens of thousands, then the overwhelming proof here of the rehabilitation of Charles Huffman as "clearly and convincingly" found by our Character and Fitness Committee should be sufficient to reinstate a former district judge who committed an act of indiscretion as an addict.

For the numerous reasons stated above, I would grant Huffman's application for conditional reinstatement under the strict guidelines suggested by the Board of Governors. Thus, I must respectfully dissent.

CUNNINGHAM and KELLER, JJ., join.