# Supreme Court of Kentucky

## 2022-SC-0470-KB

RODERICK ANIBAL TEJEDA          MOVANT

V.          IN SUPREME COURT

KENTUCKY BAR ASSOCIATION          RESPONDENT

### ORDER DENYING PETITION FOR REHEARING
### AND SUA SPONTE MODIFYING

The Petition for Rehearing filed by Roderick Anibal Tejada, of the Opinion and Order of the Court, rendered September 28, 2023, is DENIED. This Court *sua sponte* elects to modify its Opinion and Order of the Court, rendered September 28, 2023, to correct language in numerical paragraph 3 of the Opinion and Order. The original Opinion and Order is modified as set forth in the attached Opinion and Order.

All sitting. All concur.

ENTERED: January 18, 2024.

_____
CHIEF JUSTICE

# Supreme Court of Kentucky

2022-SC-0470-KB

RODERICK ANIBAL TEJEDA                                    MOVANT

V.                      IN SUPREME COURT

KENTUCKY BAR ASSOCIATION                            RESPONDENT

## OPINION AND ORDER

Roderick Anibal Tejeda applied for reinstatement to the practice of law pursuant to Rules of the Supreme Court (SCR) 3.502 after this Court imposed a four-year suspension from the practice of law for misconduct following his plea of guilty to reckless homicide stemming from an automobile accident in which the driver of the other vehicle was killed. *See Tejeda v. Kentucky Bar Association*, 456 S.W.3d 405 (Ky. 2015). The Board of Governors of the Kentucky Bar Association (KBA) by a unanimous vote of 20-0 (one member absent) recommended Tejeda's reinstatement. We ordered further review pursuant to SCR 3.370(9). The parties filed briefs, and this matter stands submitted. Following review, we have determined to accept the Board's recommendation to reinstate Tejeda upon the conditions set forth herein.

Tejeda was licensed to practice law in 1996. His bar roster address is listed 102 Sundae Drive, Richmond, KY 40475-8540, although he currently

does not reside in Kentucky. Tejeda initially worked in private practice handling bankruptcy, divorce, and criminal defense matters. After two years in private practice, he worked as a patrol agent for the United States Border Patrol. After four years as a patrol agent, Tejeda moved to the Dominican Republic to teach English and study Spanish. In 2005, Tejeda returned to Kentucky after accepting a position as an assistant Wayne County Attorney. After working in that position for one-and-a-half years, Tejeda was employed as an assistant Madison County Attorney for one year. He then returned to Wayne County and worked as an assistant Commonwealth's Attorney for six months before resuming his employment as an assistant County Attorney. Tejeda remained in that role until he was terminated in 2012 following a fatal motor vehicle collision which underlies the present reinstatement proceeding.

Tejeda, by his own admission, is a recovering alcoholic. His problems with alcohol began in his late high school and early college years. Tejeda realized he needed to address his problems with alcohol after meeting a group of missionaries from Los Angeles while he was living in the Dominican Republic. Soon afterward, he became involved with Alcoholics Anonymous (AA). Tejeda maintained sobriety for approximately one-and-a-half years until he stopped participating in AA consistently. He alternated between several months of sobriety and several months of alcohol use.

On November 21, 2006, Tejeda was arrested for DUI in Laurel County. He was eventually found guilty of DUI in 2010 following the entry of an *Alford*[1] plea. Between 2007 and 2012, Tejeda returned to AA sporadically and continued his pattern of alternating between sobriety and alcohol use.

On April 19, 2012, Tejeda was involved in a fatal motor vehicle collision in Monticello, Kentucky. He had consumed "a lot" of vodka at approximately 6:30 a.m. after drinking on and off the entire night before. Around 9:00 a.m., Tejeda was driving under the influence of alcohol at an excessive rate of speed and struck another vehicle. The collision resulted in the death of the other driver, Jarus Helen Neal.

Tejeda was indicted for vehicular homicide. He filed a motion to suppress the blood test results, which the trial court granted. The Commonwealth's appeal from the suppression order was dismissed by the Court of Appeals as untimely. Under a subsequent agreement with the Commonwealth, Tejeda pled guilty to an amended charge of reckless homicide, a class D felony, and entered pre-trial diversion. Pursuant to SCR 3.166, Tejeda was automatically suspended from the practice of law on September 11, 2013, the day after the entry of his guilty plea.

On December 3, 2013, the KBA Inquiry Commission charged Tejeda with violating SCR 3.130-8.4(b) by "committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness and fitness." Tejeda answered the

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

charge and later filed a motion for a negotiated sanction in this Court pursuant to SCR 3.480(2). The KBA filed a response in support of Tejeda's motion. This Court granted the motion for a negotiated sanction and issued an opinion and order suspending Tejeda from the practice of law for four years retroactive to September 11, 2013, the effective date of the automatic suspension following his guilty plea, or until he was finally released from probation and parole. *Tejeda*, 456 S.W.3d at 407. We additionally ordered Tejeda to remain drug and alcohol free and to continue ongoing monitoring by the Kentucky Lawyer Assistance Program (KYLAP). *Id.*

While on probation, Tejeda completed a six-month impatient treatment program at The Healing Place. He became a peer mentor and eventually a peer mentor supervisor, helping other patients who entered the program. While receiving in-patient treatment, Tejeda also took advantage of vocational training and obtained a commercial driver's license (CDL) and ultimately obtained employment as a truck driver.

While continuing his work as a truck driver, Tejeda also received training to become a certified drug and alcohol counselor. He is licensed to practice counseling in Kentucky and Georgia. Tejeda also received specific training and became a DUI education instructor. From the time of his suspension until the present, Tejeda has been continuously employed as a certified alcohol and drug counselor or as a commercial truck driver.

4

On August 13, 2018, Tejeda *pro se* applied for reinstatement. Tejeda had maintained sobriety throughout his probation in the criminal case and was finally released from supervision on September 17, 2018.[2]

While the investigation into Tejeda's application was pending, Tejeda experienced a relapse in October 2019. He attributed the relapse to a personal financial crisis and academic difficulties.[3] By his own words, Tejeda's addiction to alcohol was "immediately . . . back out of control." Tejeda was drinking approximately twelve beers a day for the duration of the relapse. He denied driving while intoxicated during the period of relapse.

In December 2019, Tejeda attended the Kentucky Law Update (KLU) in Lexington where he saw KYLAP Director Yvette Hourigan. Hourigan subsequently requested a meeting with Tejeda and Tejeda's KYLAP monitor. At the meeting, Hourigan indicated she smelled alcohol on Tejeda at the KLU. Tejeda lied and denied consuming alcohol. Following this incident, Tejeda recommitted himself to participation in AA and has remained sober. However, Tejeda did not disclose his relapse to anyone in his support system.

Approximately eighteen months later, on July 31, 2021, after retaining counsel to represent him in the pending reinstatement proceedings, Tejeda apologized to Hourigan and disclosed the circumstances of the relapse to the Character and Fitness Committee.

---

[2] The felony charge was later dismissed as diverted on September 21, 2021.

[3] Tejeda was pursuing a master's degree program at the time.

The Character and Fitness Committee conducted a formal hearing on Tejeda's application on March 8, 2022. At the conclusion of the hearing, Chief Bar Counsel and the applicant, by counsel, conferred and Bar Counsel agreed to recommend Tejeda's reinstatement conditioned on him submitting to immediate enhanced monitoring with KYLAP. Enhanced monitoring consists of weekly in-person contact with an impartial monitor, random drug testing, and a requirement to enter a 5-year KYLAP agreement with continued enhanced monitoring should reinstatement be granted. Bar Counsel withdrew its agreement to conditional reinstatement after Tejeda advised he could not comply with immediate enhanced monitoring because he was living out-of-state and on the road as a commercial truck driver. On July 5, 2022, the Character and Fitness Committee approved Tejeda's reinstatement but conditioned such approval on Tejeda immediately submitting to enhanced monitoring as previously negotiated by Bar Counsel.

Tejeda appealed to the Board of Governors and sought to remove the requirement of immediate enhanced monitoring. Bar Counsel opposed Tejeda's reinstatement before the Board. Following a hearing, the Board unanimously recommended Tejeda's reinstatement and concluded the imposition of enhanced monitoring on a pre-reinstatement basis was unduly burdensome due to the nature of Tejeda's employment as a truck driver. Instead, the Board recommended the imposition of enhanced monitoring within ninety days of reinstatement in addition to any conditions arising from Tejeda's prior KYLAP agreement which would continue under a new agreement for a period of five

6

years.[4] The parties did not file a notice of review under SCR 3.370(8), but this Court notified the parties of our decision to review the decision of the Board pursuant to SCR 3.370(9).

Under Kentucky law, the suspension or disbarment of an attorney is not necessarily a permanent disability. *In re May*, 249 S.W.2d 798 (Ky. 1952). Our predecessor Court explained the principle:

> We are not willing to say that no matter what a disbarred attorney's subsequent conduct may be; no matter how hard and successfully he has tried to live down his past and atone for his offense; no matter how complete his reformation—the door to restoration is forever sealed against him. Even wrongdoers convicted of crime are given another chance.

*In re Stump*, 272 Ky. 593, 114 S.W.2d 1094, 1097 (1938). Nevertheless, "re-entrance into the profession is not a matter of grace or pardon for past offenses." *Lester v. Ky. Bar Ass'n*, 532 S.W.2d 435, 436 (Ky. 1975). This Court has a duty to protect "the interests of the public and the profession as well as those of the applicant for reinstatement." *In re Cohen*, 706 S.W.2d 832, 834 (Ky. 1986). (*citing In re Weaks*, 407 S,W,2d 408 (1966)).

The Board and Committee considered Tejeda's reinstatement application under the standards set forth in SCR 2.300(6)[5] which provides as follows:

> (a) Whether the applicant has presented clear and convincing evidence that he/she has complied with every term of the order of suspension or disbarment.

---

[4] Tejeda's prior KYLAP agreement had lapsed and could not be renewed because he was residing out-of-state.

[5] SCR 2.300 was deleted by order of this Court effective April 1, 2022. SCR 3.503 was promulgated to replace SCR 2.300 and provides the current standard for reinstatement. The standards for reinstatement under SCR 3.503(1)-(2) are substantively the same as those previously set forth in SCR 2.300(6)-(7).

(b) Whether the applicant has presented clear and convincing evidence that his/her conduct while under suspension shows that he/she is worthy of the trust and confidence of the public.

(c) Whether the applicant has presented clear and convincing evidence that he/she possesses sufficient professional capabilities to serve the public as a lawyer.

(d) Whether the applicant has presented clear and convincing evidence that he/she presently exhibits good moral character.

(e) Whether the applicant has presented clear and convincing evidence that he/she appreciates the wrongfulness of his/her prior misconduct, that he/she has manifest contrition for his/her prior professional misconduct, and has rehabilitated himself/herself from past derelictions.

"Failure to meet any of these criteria may constitute a sufficient basis for denial of a petitioner's application." *Id.*

Additionally, an applicant for reinstatement is "held to a substantially more rigorous standard than a first-time applicant for an initial admission to the Bar," and "[t]he prior determination that [the applicant] engaged in professional misconduct continues to be evidence against him[.]" SCR 2.300(7). In addition to the criteria listed above that must be shown by clear and convincing evidence, the Committee is to consider and weigh the following factors:

- The nature of the misconduct for which the applicant was suspended or disbarred.

- The applicant's conception of the serious nature of his or her act.

- The applicant's sense of wrongdoing.

8

- The applicant's previous and subsequent conduct and attitude toward the courts and the practice, including the element of time elapsed since disbarment.

- The applicant's candor in dealing with the Character and Fitness Committee.

- The relevant knowledge of witnesses called by the applicant.

*Id.*

This Court determines the question of whether an applicant has satisfied the reinstatement standards using a totality of the circumstances approach. *Greene v. Ky. Bar Ass'n,* 904 S.W.2d 233, 235 (Ky. 1995). While the nature of the underlying misconduct is a factor to be considered, it is not the most important factor. *Id.* "The ultimate and decisive question is whether the applicant is now of good moral character and is a fit and proper person to be reentrusted with the confidence and privilege of being an attorney at law." *Id.* at 236 (quoting *Cohen*, 706 S.W.2d at 834).

Historically, we have tended to follow the Board's recommendations "unless we entertain more than a doubt as to their correctness." *In re Rosenberg*, 313 Ky. 236, 230 S.W.2d 434, 436 (1950). However, while we carefully consider the Board's recommendations, they are not binding because this Court possesses the sole authority "to enter a final order granting or denying reinstatement." *Howell v. Ky. Bar Ass'n,* 617 S.W.3d 410, 415 (Ky. 2021).

At the outset, the severity of the misconduct for which Tejeda was suspended cannot be overstated. His reckless behavior, committed while in a

position of public trust, caused the death of another person. We have not discovered any comparable Kentucky precedents granting reinstatement where an attorney's criminal conduct resulted in a person's death. The highest courts of other jurisdictions have however considered the question and reinstated attorneys following similar misconduct. *See In re Guzzino*, 185 N.J. 601, 889 A.2d 1056 (2006) (summarily reinstating attorney convicted of vehicular homicide); *Matter of Barber*, 143 N.J. 559, 674 A.2d 169 (1996) (same); *Off. of Disciplinary Couns. v. Michaels*, 50 Ohio St.3d 607, 553 N.E.2d 597 (1990) (summarily reinstating attorney who pleaded guilty to involuntary manslaughter and DUI); *Matter of Reinstatement of Arnett*, 2022 OK 87, 520 P.3d 840, 846 (2022) (reinstating attorney who pleaded guilty to first-degree manslaughter following alcohol-related collision); *In re Morgan*, 2014 OK 110, 340 P.3d 1, 6 (2014) (same); *In re Evans*, 380 S.C. 108, 669 S.E.2d 85, 88 (2008) (reinstating attorney who pleaded guilty to felony DUI causing death).

This Court has also been mindful of the effects of addiction in its determinations. We expressed the rule for when mental health disabilities may be accorded mitigation effect in a lawyer disciplinary case as follows:

> For evidence of a lawyer's disability to be accorded a mitigating effect in a KBA disciplinary case, it must be shown that the disability caused the misconduct. *KBA v. Steiner*, 157 S.W.3d 209, 213 (Ky. 2005) (the burden of establishing a successful mitigation defense remains with the attorney); *KBA v. Christian*, 320 S.W.3d 687 (Ky. 2010). The attorney must also show a recovery from the condition demonstrated by "meaningful and sustained proof of successful rehabilitation." *Id.* at 690 (citing ABA Standards for Imposing Lawyer Sanctions Section 9.32(i)(3)). Moreover, "the misconduct must have stopped and recurrence proved to be

10

unlikely." *Id.* In this vein, consideration should also be given to the attorney's involvement in Alcoholics Anonymous and "earnest participation in the Kentucky Lawyer's Assistance Program." *KBA v. Hawkins,* 260 S.W.3d 337, 339 (Ky. 2008); ABA Standards for Imposing Lawyer Sanctions Section 9.32.[6]

*Ky. Bar Ass'n v. Hill,* 476 S.W.3d 874, 884 (Ky. 2015).

This Court is also mindful of its own decisions imposing suspension, rather than permanent disbarment, as proper professional discipline in cases involving reckless homicide.[7] *Tejeda,* 456 S.W.3d at 407; *Ky. Bar Ass'n v. Jones,* 759 S.W.2d 61, 64 (Ky. 1988). Based upon the foregoing authority, we conclude the seriousness of the misconduct for which Tejeda was suspended does not, in itself, preclude his reinstatement.

While reinstatement is available, the severity of Tejeda's initial misconduct continues to weigh heavily against his application. SCR 2.300(7). Further, Tejeda failed to exhibit the necessary candor concerning relapse in the fall of 2019 and that fact alone would be sufficient cause to deny his application. *See* SCR 2.300(6). Tejeda did not inform anyone of his ongoing and

---

[6] Section 9.32 factors which may be considered in mitigation.

.... Mitigating factors include: (i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely[.]

[7] Permanent disbarment disqualifies an attorney from seeking reinstatement. *Huffman v. Ky. Bar Ass'n,* 422 S.W.3d 230, 232 (Ky. 2013); SCR 3.380.

excessive alcohol use until it was discovered by chance at a KLU event and then he lied about it. This lie directly related to a primary object of the reinstatement inquiry—Tejeda's management of his addiction to alcohol. *See Character & Fitness Comm. v. Sowell,* 599 S.W.3d 439, 443-44 (Ky. 2020).

This Court understands "[t]he potential for relapses is always present" during the recovery process. *Strasser v. Character & Fitness Comm.,* 160 S.W.3d 789, 797 (Ky. 2005) (Wintersheimer, J., dissenting). While Tejeda's response to his relapse will not be the basis for the rejection of his application, it will serve to fashion the conditions included within this Order.

This Court has carefully reviewed the record and acknowledges the substantial and praiseworthy efforts Tejeda has made toward positive change. He has worked to reform himself as well as to educate and assist other struggling people in the hope they will avoid the devastations of addiction. The record contains several reference letters attesting to the quality of Tejeda's character. Tejeda also testified that it is his intention to return to Kentucky to practice law, be closer to his child, and be of service to the substance abuse recovery community. For these reasons, we grant Tejada's reinstatement provided he complies with the conditions which we will now address.

Given the serious nature of his original offense, his later relapse, and the obvious benefits of maintaining sobriety, we agree with the Board's recommendation to impose enhanced monitoring (consisting of weekly in-person contact with an impartial monitor and random testing) in addition to any conditions arising from Tejeda's prior KYLAP agreement which would

12

resume under a new KYLAP agreement for a period of no less than five years.

However, we do not agree with the Board's recommendation that Tejeda be allowed to first be reinstated and only thereafter enter a new KYLAP Agreement and submit to enhanced monitoring. Such compliance will be a condition precedent to his reinstatement. Given that Tejada was not residing in Kentucky during the period of his reapplication, and could therefore not enter into a renewed KYLAP agreement, one of his conditions of readmission will be that he first acquire, and thereafter maintain, a Kentucky residence so as to allow direct and unhindered KYLAP monitoring.

Therefore, pursuant to SCR 3.503, it is hereby ORDERED that Roderick Anibal Tejeda's application for reinstatement to the practice of law in the Commonwealth of Kentucky is granted conditioned upon the following:

1. Payment of all costs associated with these proceedings in accordance with SCR 3.503(5), said sum being $2,743.15;

2. Prior to reinstatement, Tejeda establishing and thereafter maintaining a Kentucky residence so that he may be subject to enhanced monitoring and participate in a new KLAP agreement. He shall promptly notify Bar Counsel and KYLAP of this address once acquired;

3. Tejeda submitting to enhanced monitoring as set out by the Board in its Recommendation and such other terms and provisions as authorized to be implemented by KYLAP pursuant to SCR 3.980 concerning his ongoing recovery at the direction and discretion of KYLAP.

13

4. Tejeda entering a new agreement with KYLAP for a minimum period of five years or as long thereafter as KYLAP deems necessary. KYLAP may amend the conditions of Tejeda's participation in the program, and his agreement with it, as it deems appropriate. Tejeda shall execute a release to allow Bar Counsel to access KYLAP monitoring reports; and,

5. Payment of any outstanding bar dues and current CLE compliance;

6. Completion of any other conditions of reinstatement as set forth within SCR 3.503.

All sitting. Conley, Keller, Lambert, and Thompson, JJ., concur. Nickell, J., dissents by separate opinion in which VanMeter, C.J.; Bisig, J., join.

NICKELL, J., DISSENTING: Respectfully, I dissent. This Court's rules and precedents require an applicant for reinstatement to demonstrate exemplary conduct following suspension from the practice of law. *Lester v. Ky. Bar Ass'n*, 532 S.W.2d 435, 436 (Ky. 1975). On the present record, Tejeda's manifest lack of candor concerning the management of his addiction to alcohol "call[s] for denial of the reinstatement application." *Burns v. Ky. Bar Ass'n*, 318 S.W.3d 591, 597 (Ky. 2010).

Contrary to the initial imposition of discipline, our caselaw maintains that "[s]ympathy and mitigation . . . should not be a valid consideration in judging the merits of reinstatement." *In re Cohen*, 706 S.W.2d 832, 835 (Ky. 1986). Similarly, the mere passage of time cannot offset an applicant's failure to satisfy the stringent reinstatement criteria set forth in SCR 2.300(6). *Burns*, 318 S.W.3d at 597. Although the disease of addiction may explain Tejeda's

14

behavior, it does not excuse his lack of candor. *See Deters v. Ky. Bar Ass'n,* 627 S.W.3d 917, 926 n.14 (Ky. 2021) (noting the presence of addictive behaviors may reflect an applicant's moral character, "but in the context of an attorney's reinstatement, honesty, truthfulness, candor, honor, professionalism and integrity are also important."). To be clear, the fact of relapse is not itself deserving of censure; the blameworthiness stems from Tejeda's avoidance of truth. An applicant's honesty is the "crux of a reinstatement proceeding" because a lack of candor may indicate "a lack of rehabilitation." *Skaggs v. Kentucky Bar Ass'n,* 954 S.W.2d 311, 314 (Ky. 1997); *Futrell v. Kentucky Bar Ass'n,* 189 S.W.3d 541, 550 (Ky. 2006). Moreover, candor is of paramount importance to the reinstatement process because "a general lack of candor with the Committee . . . could foreshadow a future lack of candor with courts." *Burns,* 318 S.W.3d at 594.

It is axiomatic that an applicant for reinstatement faces a higher standard than that of a first-time applicant. SCR 2.300(7). In C*haracter & Fitness Comm. of Ky. Off. of Bar Admis. v. Sowell,* 599 S.W.3d 439, 442 (Ky. 2020), we recently revoked an impaired attorney's conditional admission after a series of relapses that culminated in the attorney's failure to report a positive screen for alcohol and cocaine "to KYLAP or to his KYLAP monitor, as required by his KYLAP Supervision Agreement." We refused to discount the attorney's violation as "a minor breach, such as a speeding ticket" because "[t]he violation was for what must be considered the primary reason [the attorney] has been under conditional admission[.]" *Id.* at 443-44. The reasoning of *Sowell*

15

compels the denial of the present application considering Tejeda's higher burden of proof, the greater magnitude of his prior misconduct, and his similar lack of candor concerning relapse.

During the pendency of the present application, Tejeda experienced a prolonged relapse. When he was confronted with publicly being under the influence of alcohol, Tejeda lied to the KYLAP director because he subjectively associated the program with the disciplinary authorities. He continued abusing alcohol on a daily basis for several weeks thereafter until he had a dream where he was threatened with arrest for drinking. While Tejeda returned to AA in the aftermath of the fear instilled by this dream, there is no indication he ever disclosed the circumstances of his relapse to anyone in his support system. Neither does the record reveal the reason Tejeda waited one-and-a-half years to disclose the relapse to the Committee. I cannot conceive an adequate justification for such delay given the crucial significance of this information. *In re Meredith*, 272 S.W.2d 456, 457 (Ky. 1954) (requiring an applicant for reinstatement "to deal fairly with all facts known to him which are relevant to a matter in issue").

With due respect to the indisputable strides Tejeda has made toward positive change, the present record belies his claim to have fully and realistically accepted responsibility for the management of his addiction. Although Tejeda "has taken steps *toward* rehabilitation," his lack of candor regarding the central subject of this application precludes reinstatement at this time. *Burns*, 318 S.W.3d at 597. Consistent with our decision in *Sowell*, I

16

would deny Tejeda's application for reinstatement with leave to submit a new application in two years from the date of this Order. 599 S.W.3d at 444. Therefore, I respectfully dissent.

VanMeter, C.J.; Bisig, J., join.

ENTERED: SEPTEMBER 28, 2023